Hartford Fire Insurance Company v. J. D. Becton et al.

Decided January 19, 1910.

**1.—Overruling Exceptions—Harmless Error, When.**

When the court in its charge assumed the validity of the iron safe clause in a policy of fire insurance and did not submit to the jury the issue of a waiver of the same, alleged by plaintiff, the defendant cannot complain of the action of the court in overruling its exceptions to the pleading of plaintiff setting up said waiver.

**2.—Deposition—Motion to Suppress—Practice.**

Where depositions have been filed during a term of court a motion to suppress them need not necessarily be made and determined at the same term; such motion may be passed on at the next succeeding term.

**3.—Same—Refusal to Suppress—Harmless Error.**

Where there was no conflict on the testimony in fixing the value of goods destroyed by fire at such an amount as justified the verdict rendered, any error of the court in refusing to suppress the depositions of witnesses whose estimate of the value was the same as the other witnesses, was harmless error, if error at all.

**4.—Action Against Insurance Company—Improper but Harmless Argument.**

In an action against an insurance company counsel for plaintiff in his opening argument used the following language: "If Jesus Christ, the Son of God, should come to the earth and take out an insurance policy, and his property was destroyed by fire, these insurance companies would charge him with burning up his property." Held, not commendable, but harmless in view of the evidence and issues.

**5.—Same—Value of Property—Evidence.**

Testimony as to an estimated value two weeks before a stock of merchandise was destroyed by fire, held harmless error where there was no conflict in the testimony that the goods were of such value when destroyed as would warrant the verdict rendered.

**6.—Verdict—Sufficiency.**

Where the insured in a policy of fire insurance began a suit against the insurance company, and afterwards the insured's trustee in bankruptcy intervened and joined in the prosecution of the suit, the following verdict,—"We the jury find for the plaintiff and assess his damages at $1,600," was sufficient to support a judgment to the effect that both the insured and the trustee recover of the defendant the sum named in the verdict.

Appeal from the District Court of Guadalupe County. Tried below before Hon. M. Kennon.

*Wm. Thompson* and *Geo. S. Wright,* for appellant.—The law only requires that motions to strike out and suppress depositions of witnesses be presented at the term next after the filing of the deposition, and as defendant's motions to suppress the depositions of the witnesses were filed in due time, the court erred in refusing to consider such motions. Rev. Stats., art. 2289; Houston & T. C. Ry. Co. v. Burke, 55 Texas, 341; Allen v. Hoxey, 37 Texas, 333.

Deposition filed at one term, hearing at next term, is in time. McGown v. Terrell, 40 S. W., 54; The Oriental v. Barclay, 16 Texas Civ. App., 206.

The law requires that the certificate of a notary on the envelope to the effect that the deposition was deposited in the postoffice at a certain time, be accompanied by his seal, and a return without such seal is invalid.   General Laws, State of Texas, Thirtieth Legislature, chapter XCI, p. 186; Rev. Stats., art. 3507; Laird v. Ivens, 45 Texas, 621.

Statements by plaintiff's counsel in his argument to the jury, in an action against an insurance company where there was no charge of arson either in the argument of defendant's counsel or in the pleading, and where there is a close issue of fact, to the effect that "if Jesus Christ, the Son of God, should come to this earth and take out an insurance policy, and his property was destroyed by fire, these insurance companies would charge him with burning up his property," are sufficient cause for reversal, where defendant's counsel in open court objected and excepted to such statements and the trial court failed to instruct the jury to disregard said statements and refused or failed to take any action in reference to such statements.   District Court Rules, 38-39-41; St. Louis Southwestern Ry. Co. v. McLendon, 26 S. W., 307; Gulf, C. & S. F. Ry. Co. v. Scott, 7 Texas Civ. App., 619; Missouri, K. & T. Ry. Co. v. Woods, 25 S. W., 741; Galveston, H. & H. Ry. Co. v. Cooper, 70 Texas, 67; Texas & St. Louis R. R. Co. v. Jarrell, 60 Texas, 267; Willis & Bro. v. McNeill, 57 Texas, 465; Gulf, C. & S. F. Ry. Co. v. Jones, 73 Texas, 236; Ft. Worth & D. C. Ry. Co. v. Burton, 25 Texas Civ. App., 63; Hanna v. Gulf, C. & S. F. Ry. Co., 27 Texas Civ. App., 492; Chicago, R. I. & T. Ry. Co. v. Langston, 92 Texas, 709.

Where an insurance policy provides that in the event of loss by fire the insurer shall only be liable for the actual cash value of the property, etc., at the time of the fire, it is error to admit evidence of the value of such property at a time prior to the date of the fire, unless it be shown that the value was the same at the time of the fire.   Johnson v. Farmers Ins. Co., 166 Mich., 96; 1 Clements, Insurance, 106.

The iron safe clause of an insurance policy is a reasonable and valid one, and its violation forfeits the policy.   Western Ins. Co. v. Kemendo, 94 Texas, 371; American Cent. Ins. Co. v. Nunn, 98 Texas, 191; Continental Ins. Co. v. Cummings, 98 Texas, 115.

Where there are two plaintiffs and the verdict is returned only for "plaintiff," the verdict is ambiguous, uncertain and invalid and will not support a judgment for both the plaintiffs.

*Ben Terrell, A. H. Young* and *Dibrell & Mosheim,* for appellees.

JAMES, CHIEF JUSTICE.—This suit was instituted on August 8, 1907, by J. D. Becton, as the assured, on a fire insurance policy in the sum of $1600 covering a stock of goods and fixtures belonging to plaintiff in his store at Olmus, Texas, which he alleged was destroyed by fire on or about May 31, 1907.

Defendant answered by demurrers, and alleged violations of the policy as follows:   First.   That the assured neglected to keep the books as provided in the iron safe clause, and neglected to keep same in

an iron safe at night, or at some other place than the store, and negligently permitted such books as were kept to remain in the store outside of the safe and permitted the same to be burned; that he neglected and failed since the fire to produce the books and inventories as called for in the contract. Second. That after the issuance of the policy, the assured sold the entire property, or a large part thereof, and thereafter the property, and particularly a portion described as a stock, was removed from the building, and such stock was sold in bulk and remained in another location and was not injured or destroyed by the fire, which sale defendant was informed and alleges was to one Petit. Third. That there was a mortgage on the fixtures at the time the policy was issued, or was placed thereon after the policy was issued. The answer also pleaded that after the fire defendant, by letter to the assured, denied liability on the policy and offered to return the premium on surrender of the policy. Also pleaded that the assured was not the sole and unconditional owner of the property insured, which was one of the conditions.

By supplemental petition plaintiff and his trustee in bankruptcy, Ben Terrell, alleged that defendant's agent agreed to issue a policy without the iron safe clause, and other matters, to which pleading defendant filed a supplemental answer containing exceptions to the above, and general denial. Subsequent pleadings were filed in which defendant pleaded that it was provided in the policy that if the assured should swear falsely in reference to a loss before or after a fire, it should become null and void, and that Becton did swear falsely in reference to the loss in question, and this was denied by plaintiff.

The verdict was for plaintiff for the full amount of the insurance.

The court did not submit anything with regard to the issue whether or not the defendant had waived the iron safe clause, but on the contrary the court assumed the validity of the clause in all of its parts. Hence, the first, second and third assignments are overruled.

The fourth, fifth and sixth assignments complain of the overruling of defendant's motion to suppress the depositions of Colville, Allensworth and Holmes. The depositions were not subject to be suppressed because the motions to strike out were not passed on at the term at which they were filed, the statute expressly authorizing them to be passed on at the next term. Another ground of objection which figures under these assignments is that the notary's certificate on the envelope, or envelopes, did not have his seal attached to his signature. This, it appears, has been held essential by the Court of Civil Appeals for the Third District in a case not yet reported, styled Wisegarver v. Yinger. We find it unnecessary, for the reason hereafter stated, to rule on this question. All these depositions appear to have been directed towards showing the goods on hand when the fire occurred. Inasmuch as by all the testimony the value of the goods destroyed was shown to be in harmony with the verdict, and there was really no issue on the subject, an error, if any, in admitting the testimony, was an immaterial one. The same applied to the seventh and eighth assignments, and also to the eleventh, in connection with which we show that appellant's brief does not allege that there was any issue in the evidence concerning the value of the goods

on hand at the time of the fire, and hence, these assignments fall short of pointing out error and are, therefore, insufficient in substance. For this reason alone these assignments should be overruled.

The ninth assignment complains of the following remark of appellee's counsel made in the opening argument to the jury: "If Jesus Christ, the Son of God, should come to this earth and take out an insurance policy and his property was destroyed by fire, these insurance companies would charge him with burning up his property." Counsel, in the proposition, say this should reverse the judgment in an action against an insurance company where there is no charge of arson either in the argument of defendant's counsel or in the pleading, and where there is a close issue of fact, and where the court, when such language was objected to at the time, did nothing in the matter. The language by counsel in an argument, in any circumstances, can not be commended. The question for us, however, is merely whether or not it probably influenced the jury in deciding what was in issue before them.

Appellant, at considerable length, goes into the evidence and seeks to show, to state the matter briefly, a state of evidence tending to show that Becton had no safe, and also that he did not have the books in a safe the night of the fire. That Becton had no safe, and could not and would not keep a safe in his store, was indicated in the sworn statements signed by Becton and his wife, taken after the fire on an examination by defendant. We will here simply refer to the fact that much testimony was adduced showing that the statement signed and sworn to by Becton was extracted from him while he was drunk and irresponsible, and that given by his wife she signed through fear of her husband, who required her to do so. We mention this, but do not think it material in this connection. We find that outside of these statements, all the evidence by witnesses showed that Becton kept an iron safe in the store. If these witnesses had been only those introduced by plaintiff, an issue might be taken to have fairly existed as to whether their testimony or the admissions in the sworn statements represented the truth of the matter. But defendant itself put a witness on the stand and showed by him that the safe was kept in the store. Now, defendant could not have reasonably expected the jury to find that the safe was not kept, having itself introduced a witness to show that it was there, and all other witnesses testifying to the same fact. Looking at it in a practical way, there was only one way the jury could have been expected to resolve the question, and we think, therefore, it can well be said that there was really no issue before the jury as to the safe being kept.

The other issue referred to by counsel, viz.: Were the books in the safe that night, was one that clearly did exist, and could have been resolved either way. The court distinctly and expressly charged the jury to find for defendant if the books were not kept in the safe that night.

It seems to us that it would be unreasonable to say that the above language of counsel affected, or was calculated to influence, a presumably fair-minded and average jury in the decision of an issue so

clearly and decisively submitted to it, concerning a fact with which the remark had not 'the slightest connection.

We overrule the tenth assignment, for the reason that the evidence it refers to appears to have been immaterial. As briefed, the basis of the assignment is that the policy provided that "it shall be canceled at any time by the company by giving five days' notice of such cancellation, and if this policy shall be' canceled, as heretofore provided, or become void or cease, the premium having been actually paid, the unearned premium shall be returned on surrender of this policy." Mrs. Becton's testimony, objected to, was that at the time (in August, 1906), of a sale by Becton to Petit, she told Tips, defendant's agent, about the sale and he' did not offer to return to her or her husband the premium. Now, confining appellant to the proposition in the brief under this assignment, it raises this question only, that "If the unearned premium should have been returned to anyone, the proper party for it to be returned to was the assured, J. D. Becton, and testimony to the effect that the agent Tips did not offer to return any part of the premium to I. M. Becton, the wife of assured, was immaterial, inadmissible and misleading, and the court's refusal to sustain defendant's objection to such evidence on that ground was reversible error." Inasmuch as she answered that it was not offered to herself or her husband, there is nothing of substance in the proposition.

The eleventh complains of testimony by witness Terrell, who stated that he was at plaintiff's store a couple of weeks or such matter before the fire and he would say from the size of the house and the way the goods looked on the counter, the goods were worth thirty-five hundred dollars. This was objected to because their value two weeks or so before the fire was not proper evidence of the value of the goods there at the time of the fire. In no event could this testimony have been harmful to defendant unless there was evidence tending to show a less value of the property at the time of the fire, than was necessary to justify the verdict for $1600. Nowhere in connection with this assignment or otherwise is it pointed out in appellant's brief that there was testimony which raised an issue concerning the value of the goods, as being of insufficient value. Unless there was such an issue made by the testimony, the admission of this testimony is not shown to have been prejudicial error, and the assignment is of no force in itself, without some such statement connected with it.

The twelfth assignment complains of the admission of Terrell's testimony as follows: Question. "Now, state whether or not you were notified by Mr. Tips, the agent of the company, that this adjuster was going out there to investigate?" Ans. "I wasn't notified by anyone." Appellee claims that it was proper to show that Becton's attorney (who was Mr. Terrell) was not notified of the examination, as a material circumstance, in view of the fact that the evidence shows that the adjuster secured the services of the justice of the peace and of the county attorney and went out in the country where Becton was, made him beastly drunk and procured a written statement from him when he was not in a condition to make a rational statement.

Appellant, in its brief, says that the testimony was inadmissible and improper, as it was easily used to influence the jury, and also that the evidence shows that the adjuster who held the examination was Ford, and if a notice should have been given, Tips, the agent, was not the one to give it. We think the admission of the evidence was improper, no notice being required to the assured's attorney and there was no proof of such a custom. But it should not cause a reversal unless it was prejudicial. This then is the question. Appellant does not state, but leaves it to be inferred how such testimony might be used to influence the jury. We infer that it might have been so used to create the impression that the omission was in furtherance of a deliberate design to secure from Becton a false and favorable statement. Was not such an inference possible from the other evidence? Ford testified that he did not know who Becton's attorney was. From this it is certain that Ford gave no notice to Becton's attorney. Becton's attorney was not present, and it was entirely improbable from all the circumstances that Tips notified any attorney. In view of these considerations, we think the judgment should not suffer a reversal for such matter alone.

The thirteenth assignment is overruled. There was no error in refusing to give the peremptory instruction. The uncontroverted evidence did not, as is claimed by appellant, show that plaintiff sold his stock of goods in bulk to Petit. The fourteenth is overruled, as the verdict is not contrary to and is supported by the evidence. The fifteenth and sixteenth are likewise overruled for the reason that the verdict for plaintiff was not ambiguous or uncertain in the fact that the plaintiff in the action consisted of Becton and his trustee in bankruptcy, who was prosecuting and representing the same right. Judgment affirmed.

### ON MOTION FOR REHEARING.

The first proposition of appellant's motion might be misleading, unless a further explanation is made of the evidence. It may be that the statement of Mrs. Becton that the inventory taken on January 1, 1907, showed $3000 worth of stock and fixtures, taken with her further statement that the sales averaged from $30 to $100 a day and never less than $30, had a tendency, standing alone, to show that at the date of the fire in May, 1907, the stock became depleted to below the amount of the insurance, although all the witnesses who testified as to what was on hand then, placed the value at about $3000. Appellant says that the depositions that were admitted over objection, were used to show that the depletion was made up by purchases; and hence, their materiality. Had these depositions not been introduced, the evidence on the subject of value at the time of the fire, placing it at $3000, would nevertheless have been uncontradicted. That testimony necessarily carried the implication that the stock had been kept up.

However this may be, Mrs. Becton was allowed to testify without objection as follows: "It (the inventory) showed that we had on hand January 1, 1907, something like $3000, between $3000 and

$3500. Sometimes I would do the buying from that time on, and sometimes Mr. Becton." . . . "I kept the books myself and they showed every day sales, cash sales, credit sales and my buying, what I bought every day. I mean that I put down on the books all that I sold, whether it was for cash or credit and the goods that came in the store."

The testimony of all the witnesses, some disinterested, showed the goods on hand when the fire occurred at approximately the value of the inventory of January 1, and nobody testified to the contrary, and as there was testimony that was uncontradicted that goods were bought from January 1 on, and the business went on as usual, we fail to see how in view of all this that the statement of Mrs. Becton that the *daily sales ran from $30 to $100* tended to show the contrary or to raise a conflict in the evidence as to the value of the goods burned. The motion is overruled.

*Affirmed.*

Writ of error refused.